And so now I'll call the case of Christopher Brooks versus the United States. But in the meantime, I'd like to welcome Miss Jordan's class, government's class. Thank you all for being here. It's a government class, right? So I think I speak for the panel. We're delighted to see young people interested in government, and we look forward to you being involved in government. Maybe one of you will be sitting up here one day. Good morning. Good morning. May it please the court, Andrew Adler from the Federal Defender's Office on behalf of Mr. Brooks. Before we get into the thorny Beeman issues, I want to begin by emphasizing the procedural posture of this case because I think it significantly informs the proper resolution of the appeal. Mr. Brooks filed his initial 2255 motion on a Friday, the night before Johnson's one-year anniversary, and it was dismissed on Monday, the next business day, with no notice, no opportunity for us to address any of the issues that the judge addressed in his sua sponte dismissal. That dismissal was a procedural error in violation of Rule 4B of the 2255 rules and in violation of the Supreme Court's decision in Day v. McDonough. It was also particularly unfair because at that time, the government was routinely waiving timeliness defenses in our district in ACCA cases, which the district court could not have overridden under Wood v. Milliard and Day. And so our position is that the easiest and narrowest way to resolve this case is to vacate the district court's decision in its entirety based on this procedural error, remand for proper reconsideration of the motion anew, and allow where the parties can fully brief all of the issues, and at the very least allow us, if necessary, the opportunity to both correct any pleading deficiency that there may be and introduce evidence that may be necessary to establish our burden of proof under Beeman to establish a Johnson violation. Now, we don't believe that that is ultimately necessary because even under Beeman, we believe we have already sufficiently alleged a timely Johnson claim, and not only that can prove a Johnson violation by looking at the legal landscape that existed at the time of sentencing in April 2001 to show that it was more likely than not, which is all we need to show, more likely than not that the sentencing judge relied on the residual clause at sentencing. Can I interrupt you for a second, Mr. Adler? Yes. Assuming we agree with you that some sort of remand is appropriate, and that's obviously a decision we have to make later, is there any reason to remand with regards to the aggravated assault conviction? You've got binding precedent in this circuit going back four or five years now, three cases published, which all say that aggravated assault counts. Sure. We recognize that precedent. We would like the opportunity to preserve that for Supreme Court review at the very least, but I would like to point out we only need to win on one of his priors. No, I understand that. My question is assuming you convince us about your main argument is about the scope of the remand. Don't you preserve it? Haven't you preserved it anyways by having the district court deny it? Probably, probably. And if we deny it, haven't you preserved it? I would hope so. So, yes, we're not going back to the district court to fight about Turner and Gold in those cases. We acknowledge that they exist and they're binding precedent. The attempted first-degree murder, on the other hand, is a wide-open question in this circuit. And he was sentenced before de camp, right? He was sentenced, yes, in April 2001. But what is the effect? 2011. But if it goes back and we assume that he, if you're correct, that he was sentenced under the residual clause and it goes back for resentencing or reconsideration, I take it that your position is that the categorical approach outlined in de camp would have to be applied. Yes, as far as. Because de camp is a clarification. It's not a new rule of constitutional law. Yes, we believe that once we've established a Johnson violation, we then need to show that that violation is prejudicial or harmful to us. And the only way to do that is to show that one of his remaining predicates no longer qualifies under another clause. And when you do that analysis, we do believe that you use the current law, including de camp. The categorical approach. Yes. Yes. So now we think that, in effect, the rematch would really just be limited to whether the first degree attempted murder satisfies the elements clause. We recognize the district court ruled on that, but I'd like to note that we did so without any briefing. And the case he cites for that is clearly an opposite. It's a case called Rowland, which is not only unpublished and on plain error, but addresses the wrong statute, addresses 18 U.S.C. 3559, which statutorily enumerates attempted murder. So that was clearly the wrong case. And, of course, we didn't have the opportunity to brief that. Same thing goes with his reliance on PSI facts. Again, we had no opportunity to address that issue. We believe that issue is also an open one in this circuit after de camp, after Mathis. We believe it violates the Sixth Amendment to do that. So we think the fairest thing to do is to just vacate the decision in its entirety and let us go back and address all of these issues. Now, we do believe the court can go further in this case if it wants to rule in our favor on the Beeman issues. We don't think it can rule against us on those issues, given our inability to correct any pleading deficiency and come forward with evidence on the burden of proof. But we think we have already done enough as far as allegations on timeliness and as far as burden of proof, given the legal landscape that existed in April 2001. As for the allegations on timeliness, not only did we fail. Can I just ask you a question about something you just said? Sure. So when you say rule in our favor on the Beeman issues, you mean make a finding that you were making a Johnson claim as opposed to a de camp claim. Is that what you? Yes, that's correct, or at least we were partially making a Johnson claim, the same thing that this court said in Beeman. And in addition to that, that we have also met our burden to prove a Johnson violation under Beeman, particularly the footnote five of that case and the accompanying sentence on page 1224 of the decision. We lay that out a little bit in our supplemental letter brief on pages six to eight where, and this I think is important, is that at the time of sentencing, everybody knew that both, not just one, but two of his predicates, ag assault and first degree attempted murder, clearly satisfied the residual clause under Begay. That's why there was no objection. That's why the district judge, the probation officer, the defendant all knew that. And everybody knew that at the time. This court was finding far less dangerous offenses to satisfy the residual clause, fleeing and eluding, escape, resisting. All were satisfying the residual clause. Here we have far more dangerous offenses at stake. And on the other hand, there were very strong arguments under precedent at that time that neither of those offenses satisfied the elements clause. So we have a really dramatic imbalance in the legal landscape that existed at the time. And we think that is... Did the judge make any specific, just remind me, did the judge make any specific statements when he found that the Armed Career Criminal Act had been satisfied? At sentencing? Yes. No. There was no objection to the enhancement. He did find that the three, he did identify the three offenses, the three predicate offenses. But it was essentially an easy decision for him, given that you're saying it was an easy decision for him, given the residual clause and the way it had been applied here. Correct. It was not in dispute at all because of the residual clause. All that happened at the end, the district court said that his three convictions counted under ACCA, but didn't specify how or why. Correct. He did not specify the clause, and that's why we're looking at the legal landscape. He just made the finding that, or rendered the conclusion that they did count. Yes. Yes, there's no question that there was an enhancement here. But the record is silent as to the clause, which is why, again, we go back to what would the sentencing judge have been thinking had he been properly applying binding precedent in April of 2011. And so I think, again, we only have to do this for one of the predicates here. And the ag-assault one, I think, is the easiest one because we had a specific binding circuit precedent in Palomino-Garcia issued in 2010, which held that Arizona's aggravated assault offense did not satisfy the elements clause because it could be committed recklessly. Now, despite this court's subsequent precedents in Turner and Golden, those did not exist in April 2011. But Florida law did exist, which held that Florida law going back decades, ag-assault could be committed recklessly. And we knew also from Curtis Johnson at the time that this court was required to apply state law and look to state law determinations about the elements of state offenses. So there's a very strong, compelling argument that it would not have satisfied the elements clause. And that's why, given this imbalance, we believe that at the very least we have shown more likely than not. I'm a little confused. You're saying that as far as the attempted murder account is concerned that you would apply – that the judge would have to apply the categorical approach. And so the judge would be taking a decision that had been made post-sentencing and applying it now to a resentencing. But you're saying that with regard to the aggravated assault, he can't do that and apply Turner. No, I'm sorry. Perhaps I wasn't clear. It is a little confusing, but there's two different questions. There's the first question about is there a Johnson violation? Did the sentencing court rely on the residual clause? To answer that question, you have to look at the precedent that existed at the time of the sentencing under Beeman. So if, though, we do show a Johnson violation based on that precedent, then the question is, okay, is that violation harmful today? And then today, doing the prejudice analysis, we have to look at current law, including Descamp. Then you would apply Turner. Correct, correct. But the other point to make is that in April 2011, even before Descamp, Descamp has no bearing on our elements clause arguments on either of the priors. And the categorical approach, of course, existed back in 2011, existed back from Taylor in 1990. My point is just that our elements clause arguments on both priors do not hinge on the divisibility of the statutes, of either statute. It's not about that. So I see I'm over my time, but thank you. Thank you. Good morning. May it please the court, Lisa Ruby on behalf of the United States. I'll start off where my opposing counsel started off with the 4B issue. And what the district court had to do was look at the face of the pleadings and determine if the defendant was truly raising a Johnson claim. And to raise a Johnson claim, we know he has to say, at the time I was sentenced, my sentence was infected by residual clause error. In other words, he had to say, I'm serving a sentence that was based on the residual clause. And nothing in his pleading did that. What about this? More probable than not, right? Or if it could go either way, then he's raised it. That is, if it's not clear. Well, if it's not clear, post-Beaman, we know that if it's not clear, he loses. So if we're going to the merits part of the Beaman argument, he has to show that it was more likely than not that he was sentenced solely under the residual clause. And he carries that burden, both the burden of proof and the burden of persuasion, and that's Beaman's direct holding. So once we get past timeliness, if we get to the merits of it, which I agree, you know, this case has come up in sort of a truncated fashion. It was decided summarily in the district court, which we think was proper. And I'd like to just go back to one point about that, which is opposing counsel states that the government was routinely waiving statute of limitations arguments. And it is true that as a policy matter, in certain cases, the United States had decided to waive those arguments. And those cases were the ones in which we recognized that the defendant could no longer qualify as an armed career criminal. In this case, with the priors of aggravated assault with a firearm and Florida attempted first degree murder, we think that the defendant clearly qualifies today. So we would not have waived the statute of limitations under those circumstances. Your adversaries argued that he wouldn't necessarily qualify under the categorical approach for attempted murder, correct? Because it could be committed in a way other than by violence. Such as by poisoning. We actually disagree very strongly with that. And we have briefed that in other cases. It obviously wasn't briefed here because of the way this case has come up. But we've briefed that in Hyler, which is 17-10856. In Phillips, which is 16-107106. Phillips is pending. Phillips is pending. In this court has not yet had oral argument. Correct. Correct. My only point is that the government believes we have very strong arguments that under a categorical approach, murder qualifies. But the question is, and what Beeman says to do, is look at this historically. Back in the day, what was the court doing with regard to first degree murder, for example? And it's the defendant's burden to show that back in the day, the courts were holding or that there was actually precedent holding or otherwise making obvious that attempted first degree murder did not qualify as a violent felony. And that he simply cannot do. He only says that today, post-Mathis, given that analysis, that more refined analysis, that it wouldn't qualify. But back in the day, the court would have done one of two things. The court either would have looked at it categorically and said, murder is the prototypical violent crime. And even post-Curtis Johnson, violent crime. I mean, Curtis Johnson quotes Black's dictionary to say that murder is sort of the prototypical violent felony. But if you're doing that, isn't that residual based? If you're doing it at such an abstract level that because it's murder and murder is one of the most heinous offenses, of course it's prototypically violent. Isn't that a residual based argument and not an elements based argument? Not really, Your Honor. Because, for example, this court in 2016 in St. Charles under a plain error standard said that an attempt to kill with a firearm squarely fits within the elements clause. And I'm not saying you take that law today and take that through the lens of today and put that back to what was happening at the time. But back in the day, these kinds of sophisticated arguments about poisoning and recklessness and all of these things were not being litigated in the courts. And so even if the courts, if the court back in 2011 would not have looked at this and said attempted first degree murder plainly constitutes the use, or a threatened use of physical force as understood to be violent force, even if that didn't happen, the court could have looked to the modified categorical approach and perhaps incorrectly post-Discounts and Johnson, excuse me, and Mathis, but would have looked to the modified categorical approach and said, okay, how did this defendant commit this crime and then categorically did it qualify? Why was this, was this a divisible statute? The attempted murder? Yeah. Yeah, so attempted murder is divisible as between 1A, which is premeditated murder, and then all the following sections would cause for murder with particular types of felonies or other circumstances. So as to the type of murder being committed, this fell into the first subsection, which is basically premeditated murder. And if the court had looked to the undisputed PSI facts, they would have seen that this was an attempted murder where the defendant held a gun and actually- But you can't do that. All you do is find out which group you're in. Correct. And then at that point, you go back to the categorical. Absolutely. I'm 100% in agreement. So what I'm saying is to determine which type of murder this was, the court would have looked to the undisputed PSI facts, seen that, oh, this was a murder, attempted murder where the defendant actually shot someone, so that's in the 1A part of the statute, and then asked themselves, is premeditated, attempted premeditated murder, is that a violent felony? So they would have looked back to those undisputed PSI facts in order to implement the category. And that is the minimal conduct that could result in a conviction under that particular section. Does it fit within the concept of a violent felony under the federal generic? And that's the question, right? Yeah. And so then you get into the poisoning and other ways of committing murder that might not be violent. Correct. So as my colleague recognized, there's sort of three levels to this case. The first is, does the defendant get through the timeliness hurdle? The second is, can the defendant prove within the terms that Beeman has shown us, can the defendant prove that he suffered from a Johnson violation? And then once you get past that, you get into the merits. Is the defendant today still an armed career criminal based on the prior convictions for aggravated assault and attempted first-degree murder? So he's got three hurdles to get through, and we don't think he gets through any one of them. If the district court was going to summarily and did summarily deny the motion, was it entitled to go in and look at the record without giving the parties a chance to address what the record showed or didn't show? In other words, if it was going to summarily deny, didn't it have to go on the face of the pleading and nothing else? Correct. And on the face of the pleading, what the defendant said was, after Johnson, I'm no longer an armed career criminal because, look, my two elements clause, my two prior for aggravated assault and first-degree murder, they don't qualify under Descantz and Mathis. He never alleged that he had been improperly sentenced under Johnson? He said, post-Johnson, I don't qualify anymore. He never said that I was sentenced based on the unconstitutional residual clause, and that's sort of the bare minimum of what he has to say. When you say it's a bare minimum, then that means it was enough? No, what I'm saying is the bare minimum of what he has to say is I actually was sentenced based on the residual clause. That's the bare minimum. But he says Mr. Brooks now requests relief in light of the Supreme Court's decision in Johnson v. United States decided June 26, 2015, which held that ACCA's residual clause is unconstitutionally vague. Application of Johnson to this case shows that Mr. Brooks' sentence was imposed in excess of the statutory minimum. You say that's not enough? No, Your Honor, because that does not necessarily convey the idea that he actually was sentenced back in the day to the residual clause. All he's saying now is, oh, look, the residual clause no longer exists, and if we analyze my two priors today, I don't qualify. He never once said I was sentenced under the residual clause. But it's a pleading standard. It is. And you're saying that you deny that with prejudice, without telling him, listen, you may not have alleged enough. I'm going to give you a chance to amend your petition. You just deny it summarily like you would a civil complaint? Well, he did in his 2255, he did say my claim is timely because. So he raised this idea of timeliness, put forth what he thought would satisfy that. The judge looked at that and said, no, you know what, that's not enough. But the judge didn't go just to that. The judge went into the record. The judge didn't just say your pleading is facially insufficient, right? You summarily deny motions, complaints, pleadings, if on their face they're insufficient. Correct. But the district court didn't just do that. The district court dove into the record, extra pleading stuff. Right. And my question is, if the judge went beyond the pleading, shouldn't the judge have allowed the parties to respond? Shouldn't have asked the government to respond and given Mr. Lee an opportunity to, Mr. Brooks an opportunity to reply? To see what the record showed or didn't show. The judge basically read the record in a certain way, and he may have been right in reading it that way, but he did it without any input from anybody. Well, I think that in this case, you have to look at this in terms of both what the judge did and what we know post-Beeman was the correct thing to do. And we do know from just the face of these pleadings that it wasn't enough. And we even know from the additional allegations that the defense has put forward in their supplemental letter brief that it's still not enough to get past the department's hurdles. Again, back to the pleading, I'm reading, he argues, clearly murder does not have to have, referring to this statute under which the conviction we're talking about, does not have as an element the use, attempted use, or threatened use of violent physical force, cites Johnson. I don't know what more you want on a plea. And this is a pleading filed on a Friday that was dismissed on the following Monday. Yes. Let me put it in these terms. So under 2255F3, the defendant has to do some very specific things to get through that narrow statute of limitations portal. It's a very, Congress has decided that after a conviction is final, there's going to be very few ways to overturn that final judgment. And F3 is one of them. But what he has to show is that he's actually relying on a newly created right, relying on Johnson. But what that means is not- Johnson's all throughout the- Right. But what that means, Your Honor, respectfully, is not I can say Johnson, Johnson, Johnson. What that means is he has to say, he has to assert, and Beeman says this, he must assert, I was sentenced based on the residual clause. Not that today, post-Johnson, I'm no longer an armed career criminal. And Beeman makes this- He was never given an opportunity to, this has already been said. I mean, he's never given an opportunity to reformulate his pleading under those circumstances. He was in his supplemental- He could have said that. Because here, it seems to me, where the judge says nothing, and the easy way out is the residual clause, it, you know, it almost, it's kind of common sense for anybody who's been a district judge to think that why would I sweat over whether or not this is categorically a violation of the elements clause when I've got the residual clause? And we don't have to say one way or the other, right? No. Either way. That kind of turns Beeman on its head because what Beeman says is it's his burden to prove, more likely than not, that he was actually sentenced under the residual clause. But with the aggravated assault conviction, there was precedent from this circuit applying the residual clause to a very similar statute from another state. Correct. So if that's the only law that existed at the time he got sentenced as an ACA offender, why isn't it reasonable to believe that he has shown, more likely than not, that the district court used the residual clause to include the aggravated assault conviction as a predicate? For two reasons. First, what he's saying is that had the courts been doing what they should have in interpreting this prior case, Palomino-Garcia, had they been interpreting that correctly, that's his argument, they would have been holding that this qualified only under the residual clause. But that's not a showing of what they were doing, and we certainly know by the time But there's no other precedent at the time he gets sentenced on an aggravated assault conviction from anywhere except Palomino. So if you're trying to read the tea leaves, if a district judge, to go back to what Judge Walker was saying or Judge Martin was saying, if a district judge has a landscape of circuit law that says this conviction counts under this approach, why is a judge going to go out on a limb to do anything other than use that settled law to apply the Armed Career Criminal Act? I think reading the tea leaves goes both ways, because when we get to Turner, and I know that we can't take today's law to interpret past law, but once we get to Turner, there's nothing in Turner that suggests that it was overturning prior law to say that aggravated assault I know, but you can't do that. There was no prior law. Correct. And if there's no prior law saying that he had to have been sentenced under the residual clause Not that he had to have been sentenced. You're trying to find by a preponderance of the evidence, it's his burden to show under Beeman that it was more likely than not that the district court applied the residual clause to him. And if you think that first degree murder doesn't fit in there for the reasons you've articulated, then it seems to me that there's a pretty good argument that aggravated assault does count, because you've got just one opinion out there from the circuit on aggravated assault at all, and it goes residual. If the district judge has that to fall back on at the time of sentencing, why isn't it reasonable to believe that that's what the judge relied on? Well, I think we have to go back to Beeman's language, and Beeman has specific hurdles that the defendant needs to get past to prove exactly what Your Honor is saying. And he has to show that there's precedent either holding, directly holding, or quote, otherwise making obvious that only the residual clause applies. And even if, even if he could kind of maybe get there after Palomino-Garcia with regard to aggravated assault, which I'm not conceding, he certainly can't get there with regard to attempted first degree murder, and he's got to overturn both. No, but to get through the Beeman hurdle, he only has to show that one of them was used. In other words, let me change the facts for you, so this is not this case. Okay. If the district judge had said at the sentencing hearing, I believe that Palomino is on all fours, although that involved an Arizona aggravated assault conviction. The Florida aggravated assault statute is exactly the same. I am finding that Florida aggravated assault counts as a predicate under the residual clause. It says that expressly, explicitly. It says nothing about attempted first degree murder. He's gotten through the Beeman hurdle, right? He may not win on the merits because later law says that aggravated assault counts under the elements clause, but he gets through the Beeman hurdle, right? Even if there's nothing said about attempted first degree murder. In other words, getting through the Beeman hurdle isn't a guarantee that you're going to win on the merits. You may get through it and lose because of later case law. So he doesn't have to prevail on the Beeman issue with regards to attempted first degree murder. Well, I can see where you're coming from, and that does get into the three different layers of review that we have, the timeliness, then the Beeman merits, and then the underlying merits. So, you know, I suppose that... It's a mess. Yeah. We all understand that. We live in the post-Johnson world, so that's kind of a messy world that we live in. But, you know, I think that's really not... He hasn't taken it far enough to show that on a theoretical level, there was some kind of maybe the courts should have been doing something kind of argument. That doesn't get past Beeman. Beeman came forward with very specific things the defendant had to show. And I see my time is up, but... I actually have a question on the timing issue. Sure. You say it's not timely because he's making a DeCompte claim and not a Johnson claim. But in Beeman, one of the things the panel considered was the day the petition was filed. And, of course, Mr. Brooks filed one day before, two days before the one-year anniversary of Johnson. So, do you just not consider that? You do consider that. The Beeman court looked at three things that Beeman had put forward in his motion that got him over the timeliness hurdle. Not the merits. And one of them was he was clearly making an attempt to beat the statute of limitations. Absolutely. That was one of them. But the other two are significant, and they should be given equal importance, which is that he said, historically, this crime qualified under the residual clause. And he said that back in the day, courts were analyzing these things sort of as a default under the residual clause. And those two things went to the assertion that he indeed was sentenced under the residual clause. If you look at Mr. Brooks' motion, it's more instructive to look at what he did not say, because he did not say those two things. He did make the timeliness argument, look, I'm coming in right in the time window. He did say that. But he didn't say anything else that would convey that he was actually really sentenced under the residual clause. He just said, post Johnson, you can't use the residual clause to make me an armed career criminal, and you can't use the elements clause post Decomp and Mathis. I understand your argument. Thank you, Your Honor. So I think the court well understands our burden of proof argument. So I think I want to focus on the timeliness aspect, if I can. The government is basically requiring magic words at the pleading stage, and this is a rule that's going to be applied not only in this case but to many other cases, which are pro se pleadings. And we think that not only the timing of the filing here and not only the number of times that Johnson is cited in the motion, about a dozen times, it's pervasive throughout the motion, but we are specifically alleging in the motion that in light of Johnson, we are no longer an armed career criminal. An application of Johnson to this case shows that we are no longer an armed career criminal. Now, could we have used the specific language that the government wants us to use? Yes, and if we were given an opportunity and notice to do so in the district court, we would have. Indeed, I think it's quite telling that the fact that we can meet our burden to prove a Johnson violation only reinforces the fact that we've sufficiently pled a Johnson claim in this case. But, you know, I think the government's position really elevates form over substance here. I have a friend that used to say to me, are you going to believe me or your lying eyes? My eyes are seeing a Johnson claim. And I'd also like to say this is not a floodgates problem here. In cases where somebody, the movement is not legitimately, genuinely seeking to benefit from Johnson, that movement is going to lose either at the timeliness stage or on the merits. So I think when we're looking at a pleading requirement here, when we're looking at, I mean, this was, by the way, a motion, a form motion from our office that we filed in hundreds and hundreds of cases. If you look at Beeman's motion, it's really the same theory. This is the motion that people were filing all over the country. Of course, Beeman did not exist at the time. So we didn't, you know, know that we had to specifically use certain phraseology or language that the government is now accusing us of not using. As for the Rule 4 issue, I didn't hear anything in the government's argument explaining why our case was frivolous, which is essentially the Rule 4 standard. The language of Rule 4B says that the district court is authorized to sua sponte, dismiss a pleading, only if it plainly appears from the face of it that the movement is not entitled to relief. So on the timeliness issue, not only do we have the argument that I just advanced as far as our allegations, but we also have the fact that this motion would be timely in other circuits. We got a COA on this very issue. So at the very least, it's not plainly untimely. As for the government's response that it was not routinely waiving in ACCA cases, it may not have been routinely waiving, but it was waiving repeatedly and not just in the cases where it was conceding on the merits. In fact, if you look at the Lavelle Phillips case, which we cite in our letter brief, and you look at the filings in the district court there, it's a first-degree attempted murder case just like this one. They expressly conceded timeliness in the district court.